GEORGE GRIFFIN *vs.* ADAM REECE and ELIZABETH his wife, late ELIZABETH FISHER.

Construction of the terms *lien* and *incumbrance* in the dower law of 1816.

Debts contracted prior to the act of 1816 not preferred to dower unless they are liens, &c.

The decision in *Brinckloe* vs. *Brinckloe*. *Digest*, 168, *n.* considered and confined to the particular case.

If land be sold by the sheriff on a judgment obtained after 1816, though for a debt contracted before, it is liable to dower.

A sheriff's sale cannot divest the claim to dower any more than a voluntary sale by the husband.

APPEAL from the orphans' court of Newcastle county.

This was a petition for dower. The petitioner Elizabeth Reece, late Elizabeth Fisher, claimed dower in a house in the city of Wilmington of which her first husband George Fisher was seized during their marriage. The marriage took place prior to 1814, and Fisher died in 1829. James Dougal, on the 29th of May, 1816, obtained a *judgment* against George Fisher, under which judgment the house in question was sold in 1817, and bought by the deft. George Griffin. The *debt* of James Dougal was created prior to 1816, but during the marriage of Fisher and wife.

The claim of dower was resisted on the ground that the debt of Dougal under which the house was sold existed prior to the 16 February, 1816; that it was a lien or incumbrance at the passing of the act of 1816, within the proviso contained in that act and cannot be destroyed by that act, but is expressly protected by it; and the case of the widow of *William Brinckloe,* decided in 1821 in Kent by Chancellor Ridgely and affirmed on appeal by the supreme court, was urged as decisive of the present claim. *(a)* (Note to *Digest,*

(a) Eliza Brinckloe *vs.* John Brinckloe and others.

Petition to be endowed out of the lands of which William Brinckloe the husband of the said Eliza died seized. The defts. pleaded that they were purchasers of the land which had been sold by order of the orphans' court for the payment of the debts of the said William Brinckloe contracted prior to the 16th of February, 1816. The petitioner replied that the said debts were not such liens or incumbrances as could affect her right to dower.

*The Chancellor, (Ridgely.)*

"In this state all lands, tenements and hereditaments, where no sufficient personal estate can be found, are liable to be seized and sold upon judgment and execution obtained. 1 *Del. Laws* 110. So lands may by executors (1 *vol.* 281) and by administrators (1 *vol.* 292) by order of the court for payment of debts. By these acts of assembly all debts are in some form charged upon lands and made liens or incumbrances, so as to exclude the widow's dower. And in the supplement to "An act for the better confirmation of the owners of lands, &c. in their just rights and possessions" (1 *vol.* 138) it is declared that by the laws of this government lands were always subject to be taken in execution and sold for the payment of debts, as well as to be sold by executors and administrators for the payment of their intestates and testators debts. It is evident then that debts always have been incumbrances on land; and although their effect has not been such as to bind or charge them when bona fide sold by the owner in his lifetime; yet in all cases where the land passes by the operation of law, or by devise the debts are liens or incumbrances and the wife, heir or devisee takes, liable to be affected by such

168, *Brinckloe* vs. *Brinckloe*. Debts contracted prior to the passing of the act of 1816, have preference to the widow's claim of dower.)

incumbrances. The difference consists in the mode of proceeding in converting these assets into money for the satisfaction of the debts, and not in the liability of the land. When the land is sold by the sheriff on an execution upon a judgment recovered in a court of law, or by an executor or administrator by order of the orphans' court, the wife is completely barred of her dower. A mortgage is a lien on land yet if the wife does not join in the deed, and the land after the death of the husband is sold by process of law on the mortgage the wife is not thereby barred of her dower. This was so decided in the high court of errors and appeals at August term 1809, in the case of *Marshall* vs. the lessee of *Daniel Wolf*. But if there is a debt or bond or simple contract, and the husband dies, the land may be sold to bar the dower of the wife, either upon judgment recovered at law or by order of the orphans' court. In these instances the debts operate according to the nature of the securities. The bond or simple contract debt is a lien, or incumbrance, or charge on the land, and, after the death of the husband, attaches and must be paid before the wife can take her dower, but the mortgage has no such effect, and the reason is because the law charges the bond or simple contract debt on the land and the mortgage is a lien by the act of the party and the wife not having joined in it she is not barred. A judgment recovered after the marriage did not at common law bar a widow of her dower; but the acts of assembly before mentioned made them liens or incumbrances against the wife, and made a common debt as to her as much a lien or incumbrance as a debt on judgment. In giving a construction to the act of 1816, the words lien or incumbrance must be expounded according to the intention of the legislature and the subject matter. When the legislature excepted liens, or incumbrances existing before the passing the act they excepted all such charges, burdens, liens or incumbrances, no matter by what name they were called as before that act prevented a widow from recovering her dower. The general provision of the act is that the wife shall be entitled to dower in preference to all charges and incumbrances created by the husband alone after the marriage, but it was felt that it would be a breach of faith, a violation of contract to give the wife a right of dower paramount the debts which had been created and were incumbrances before the act was passed, and therefore they provided that nothing therein contained should be construed or taken to affect or destroy any lien or incumbrance existing before the passing the act. A judgment recovered after the marriage no more barred the wife, than a debt not upon judgment; but on the death of the husband they both attached and barred her; and therefore they both alike were incumbrances as to her and are excepted. It was not designed by this act to break in upon the existing rights of the parties; but prospectively to adopt a new system in relation to dower. And certainly no wrong was done to the wife by leaving the law as to past cases precisely the same as it stood at the time the act was passed. Whatever may be the technical meaning of the word lien or incumbrance we must use and construe them according to the sense of the legislature and so as to give effect to the act of assembly, see 1 *Vern.* 309, *Norten* vs. *Sprig*; a bond given by a widow who afterwards married, is called by the court a lien by deed, and 3 *Burr.* 1375, *Montcaster* vs. *Watson et al.* the words charges and incumbrances were said to mean incumbrances on the estate as dower, &c. With my view of the subject it is unnecessary to enter into a consideration of the constitutionality of the act. The legislature did not interfere with past contracts, they left them in full force; and by no means impaired their obligation.

The orphans' court, nevertheless, decreed dower in the present case, distinguishing it from the case of *Brinckloe* vs. *Brinckloe,* and deciding: First. That a sale by the sheriff of the real estate of the said George Fisher, under the judgment of James Dougal, could no further bar the widow's right of dower than a conveyance of that real estate by George Fisher himself, in May, 1816, would have done: Second. That George Fisher by such conveyance could not have debarred his widow of her dower: Third. That as the premises in question were sold by the sheriff under the judgment of James Dougal, which did not attach to the premises and become a lien thereon until after the 16th of February, 1816; and as that debt and judgment had been extinguished in the lifetime of the said George Fisher by satisfaction out of the sales of those premises, and did not exist at his decease in 1829, it could not and did not attach to his real estate on his decease and become a lien or incumbrance thereon according to the principle decided in Mrs. Brinckloe's case "that debts created prior to 1816 and existing at the decease of the debtor attach to his lands on his decease and become a lien or incumbrance paramount to the widow's claim of dower." Fourth. That the debt of James Dougal was not a lien or incumbrance on his real estate at the death of Fisher, because it had been satisfied in his lifetime. Fifth. That during his life it was not a lien or incumbrance on his real estate until judgment was obtained therefor, which was on the 29th May, 1816, after the passing of the act of 1816, securing the right of dower to the widow: and, sixth. That Fisher between the 16th of February and 29th of May, 1816, could have conveyed the said house and lot free from any lien or incumbrance of Dougal's debt, but such conveyance would not have barred his wife of her dower therein.

Whereupon an appeal was prayed and granted; and the question here was whether upon the foregoing statement of facts the petitioner Elizabeth Reece, late Elizabeth Fisher, was entitled to dower under the provisions of the act of 16th February, 1816, in the premises in question, as against Griffin the purchaser at a sheriff's sale made by virtue of Dougal's judgment.

*Hamilton,* for the purchaser. The case depends on a construction of our act of assembly. Before that act there is no doubt that a widow would not be entitled to dower as against the creditors of her husband. The act declares that "the widow of any man, who shall die after the passing of this act, and who during their marriage was seized of an estate of inheritance in any lands or tenements within this State, shall have the third part of all the lands and tenements, whereof her said husband was seized as afsd. at any time during the marriage, to hold to her as tenant in dower for and during the term of her natural life, free and discharged from all and every the alienations, covenants, debts, liens and incumberances made, entered into, contracted or created by the said husband after the intermarriage, unless she shall have relinquished her right of dower therein by her own voluntary act according to the existing laws of this State: *Provided always* that nothing herein contained shall be construed or taken to affect or destroy any lien or incumbrance existing before the passing of this act." The law speaks of debts, &c. *contracted* by

the husband; this must evidently mean debts contracted after the passing of the law or it would be unconstitutional.   It is admitted that this debt of Dougal's was contracted before the passing of the act. As the law then stood, Fisher's land was liable to be sold for this debt discharged of any claim of dower, and it was not competent for the legislature to vary or affect this contract liability.   I agree that after the law all contracts are governed by it, for the contracts are made in reference to the law and the law becomes a part of the contract; but not so of debts contracted before the law.   But this debt was a lien or incumbrance according to the construction placed on those terms, as used in the proviso to the act of assembly, in the case of Brinckloe and Brinckloe, which is not distinguishable from this. In the orphans' court a man's lands are liable to be sold for the payment of his debts as well simple contract as those which are reduced to judgment or mortgage or recognizance; in that court therefore all the debts of a man are regarded as liens or incumbrances on his lands, and wherever such debts exist prior to 1816, they have preference to the widow's claim of dower.   *Dig.* 168, *note, Brinckloe* vs. *Brinckloe.*   This case also is distinct from a voluntary conveyance by the husband without his wife: the sale was on execution process and the conveyance by operation of law without the will of the husband.

The Court, without hearing Wales for the petitioner, *affirmed* the decree of the orphans' court.   They remarked upon the case of *Brinckloe* and *Brinckloe*, as having been decided on very refined, if not questionable grounds; but said that they would nevertheless consider it in a case exactly similar, of obligatory authority to the extent to which it went but no further.   They thought this was not such a case, but clearly distinguishable. *(b.)*

In the case of Mrs. Brinckloe her husband *died seized* of the lands of which she asked to be endowed.   Those lands had been sold by order of the orphans' court for the payment of debts contracted prior to 1816, and which were *existing debts* at the time of his decease. The claim was resisted on that ground by the purchasers of the land; and their title under the sale made by order of the orphans' court was held paramount to the widows right of dower under the act of 1816. The extent therefore of that decision was that debts created *before* the 16th of February, 1816, and remaining *unpaid* at the *decease* of the owner of the land, became *on his death*, when his land passed by devise or the operation of law to his widow, heirs or devisee, liens on his lands, and which were to be satisfied out of those lands in preference to the widow's claim of dower; and that on a sale by order of the orphans' court to pay such debts, the widow is not entitled to dower.

Three things, according to the decision in Brinckloe's case, were necessary to complete the lien of a creditor, which would overreach the widow's claim of dower: First. The existence of the debt prior to the 16th February, 1816.   Second. The death of the debtor.

---

(*b*) In *Gordon* vs. *Harris*—Sussex, 1822.   The *Chancellor (Ridgely)* decided that though the debt was contracted or created prior to the act of 1816, a bond or judgment subsequently taken, for the same debt, would not bar the widow's claim of dower.   He regarded the new form of security as a new contract; which, being after the law, fell within its provisions.

Third. The existence of the debt at the *decease* of the debtor. On the decease of the debtor and not till then, the debt attached to the land and became a lien or incumbrance, because the debtor during his life, (no judgment having been obtained) could have conveyed his land, bona fide, free and unembarrassed of all his debts secured by bond or simple contract: such debts, therefore, were not a lien or incumbrance on his land so long as he lived. As the death of the party was necessary to consummate the lien or incumbrance by the extinguishment of the debt in the lifetime of the debtor, it would seem necessarily to follow that such a debt never had existed *as a lien or incumbrance,* according to the principle established in the case of Brinckloe, for by that case to make it a lien or incumbrance which would be paramount to the claim of the widow, it must have existed prior to the act of 1816, and must have continued to exist till the decease of the debtor: *on the decease* it attached to the land and was held as against the widow, a lien or incumbrance from the creation of the debt, if before February, 1816, but both the existence of the debt at the decease of the debtor, and the decease of the debtor are necessary according to that case to establish and perfect the lien and to carry its operation back to a period prior to the passing of the act of 1816, so as to defeat the claim for dower: that case does not establish the principle that debts which a man might owe on bond or simple contract and which were satisfied before his death, were ever liens on his land or are to be held as liens after his decease so as to debar his widow of dower. The decision in Brinckloe's case enlarged the class of liens and incumbrances and comprehended by those terms what had not before been supposed to be embraced within them, that is, debts, not reduced to judgment, mortgage or recognizance, which might remain unsatisfied at the decease of the debtor, and that such debts should operate as liens against the widow's claim of dower, from the time of their creation. At the death of George Fisher, in 1829, there was no debt due from him to James Dougal and it cannot therefore be held that Dougal's debt was a lien on the lands of Fisher, according to the principle as to liens first established in Brinckloe's case. Dougal's debt was reduced to judgment on the 29th May, 1816: it *then* became a lien and not before, for till then Fisher had full power to convey his land free from any operation or incumbrance of this debt, but such a conveyance would not have debarred his widow's claim of dower. On this judgment the land of Fisher was sold in 1817, and the debt of Dougal by that sale discharged. Can a sale by the sheriff on a judgment obtained after the 16th February, 1816, preclude the widow from her dower, when a bona fide conveyance by the debtor himself would not be permitted to have this effect? By the act of 1816 there is secured to her dower in all lands of which her husband was seized during the marriage, "free and discharged from all and every the alienations, covenants, debts, liens and incumbrances made, entered into, contracted or created by the husband after the intermarriage:" she takes it free from all his covenants, *debts,* liens and incumbrances, except merely those *liens and incumbrances* (not debts) which existed prior to that act. The only character as a *lien* which Dougal's debt ever possessed, was when it became a judgment in May, 1816, and that

character ceased when the judgment was extinguished by the sale. Both the judgment and the debt were extinguished in 1817, and there remained at Fisher's death in 1829 no debt which could attach as a lien to the house and lot. The sale made of the house and lot to Griffin by the sheriff was under a lien created on 29th May, 1816, the day when judgment was obtained.

Decree affirmed.

*Wales,* for petitioner.
*Hamilton,* contra.